GREGG A. HUBLEY (Nevada Bar # 7386)
ARIAS SANGUINETTI WANG & TORRIJOS LLP
7030 Smoke Ranch Road, Suite B
Las Vegas, NV 89128
Telephone:     (702) 789-7529
Fascimile:     (702) 909-7865
Email:         gregg@aswtlawyers.com

JORDAN MATTHEWS (California Bar # 316301)
*Pro Hac Vice Admitted*
WEINBERG GONSER LLP
10866 Wilshire Blvd., Suite 1650
Los Angeles, CA 90024
Telephone:     (424) 239-2867
Fascimile:     (424) 238-3060
Email:         jordan@weinberg-gonser.com

MICHAEL D. HOLTZ (California Bar # 149616)
*Pro Hac Vice Admitted*
THE HOLTZ FIRM
9150 Wilshire Blvd., Suite 209
Beverly Hills, CA 90212
Telephone:     (310) 464-1088
Fascimile:     (323) 206-5535
Email:         mholtz@theholtzfirm.com

Attorneys for Plaintiff *Angelica Christina Limcaco*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANGELICA CHRISTINA LIMCACO,<br><br>Plaintiff,<br><br>v.<br><br>WYNN LAS VEGAS, LLC., a Nevada limited liability company, STEVE WYNN, an individual, DOES 1 through 10, inclusive and ROE CORPORATIONS 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:18-cv-01685-MMD-GWF<br><br>**AMENDED COMPLAINT FOR:**<br><br>**(1) Retaliation Under Title VII**<br>**(2) Sexual Harassment (Hostile Work Environment)**<br>**(3) Hostile Work Environment Caused By Supervisor**<br>**(4) Hostile Work Environment Caused By Co-Worker**<br>**(5) Retaliation in Violation of N.R.S. 613.340**<br>**(6) Wrongful Termination in Violation of Public Policy**<br>**(7) Intentional Infliction of Emotional Distress**<br>**(8) Civil Conspiracy**<br>**(9) Interference with Contractual Relations**<br>**(10) Interference with Economic Advantage**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, ANGELICA CHRISTINA LIMCACO, alleges as follows:

## I.  **SUMMARY OF ACTION**

1.     This Federal action is brought by Plaintiff, Angelica Christina Limcaco ("Ms. Limcaco" or "Plaintiff"), to seek redress against her former employer, Wynn Las Vegas, LLC. ("Wynn"), Mr. Steve Wynn ("Mr. Wynn"), and all affiliated parties (collectively, the "Defendants"), who subjected Ms. Limcaco to an abusive, hostile, and coercive work environment, and who interfered with and abruptly terminated her employment for attempting to blow the whistle on an organization complicit with rampant abuse and sexual assault. Ms. Limcaco was subject to traumatic and life-altering experiences in connection with Defendants' nefarious acts. The Defendants' collective actions detrimentally affected Ms. Limcaco's emotional well-being and resulted in ongoing feelings of fear, paranoia and mistrust.

2.     Ms. Limcaco obtained employment with the Wynn through a referral to Elaine Wynn ("Ms. Wynn") by her former employer, Jose Eber ("Mr. Eber"). As set forth below, within the first two weeks of her employment with the Wynn, Ms. Limcaco was forced into oppressive circumstances when her assistant manager, Carolyn, asked her to meet privately with a co-worker, Andrea, who claimed that she was raped by Mr. Wynn and was pregnant with his child. Andrea told Ms. Limcaco that her husband recently discovered the pregnancy and was understandably furious. Ms. Limcaco followed protocol and reported the incident to human resources, which was overseen by Mr. Arthur E. Nathan ("Mr. Nathan").

3.     Shockingly, within twenty-four hours of reporting the alleged rape incident to human resources, Ms. Limcaco was called into the office of her supervisor, Ms. Doreen Whennen ("Ms. Whennen") (former vice president of hotel operations), and reprimanded. Although Ms. Limcaco attempted to explain that she was following protocol as she was told to do at the commencement of her employment, Ms. Whennen told her "*let me make this clear to you – this is the way it works here – all reports go to me first – especially anything concerning Steve Wynn*." Ms. Limcaco was then warned by Ms. Whennen to never speak of the alleged rape incident again. She was also explicitly told that her assistant, Carolyn, was going to be terminated (apparently for

doing her job and reporting the alleged incident to Ms. Limcaco). Ms. Whennen was in a position of significant power over Plaintiff, causing Plaintiff to feel emotionally dominated by her.

4.      What's more, once Ms. Limcaco reported the alleged rape incident, Andrea never returned to work and was unreachable. Andrea simply vanished and neither Ms. Limcaco nor any of her co-workers at the Wynn ever heard from her again.

5.      Ms. Limcaco became concerned for her own personal safety after Andrea's disappearance. Aside from the outlandish conduct she personally experienced (i.e. being subject to reports of extraordinary allegations of rape and sexual assault by Andrea and other Wynn employees (i.e. lead manicurist, Jennifer; manicurist, Tiffany; administrative assistant, Elizabeth, et al.)), Ms. Limcaco was told by several colleagues (including the artistic director) that Mr. Wynn was more powerful than the police and that there may be people buried in the desert because of him. It was well known amongst her and other Wynn employees that taking action against the casino would result in being blacklisted in the gaming industry and elsewhere. In fact, during Ms. Limcaco's employment with the Wynn, many of her co-workers were abruptly terminated and never heard from again.

6.      Therefore, Ms. Limcaco did as she was told and reported at least six more incidents of alleged sexual assault by Mr. Wynn over the next eight months to Ms. Whennen, but not to human resources. When Ms. Whennen did nothing, Ms. Limcaco went to Mr. Andrew Pascal (Elaine Wynn's nephew and President & COO of Wynn Las Vegas) and told him about the numerous sexual assault allegations against Mr. Wynn and the lack of proper response by Ms. Whennen. Within a few weeks, Ms. Limcaco was abruptly terminated from her employment.[1] Ms. Whennen fabricated the reason for Ms. Limcaco's termination by claiming it was related to her work performance, and disguised the Wynn's true intent, which was to conceal and facilitate Mr. Wynn's rampant sexual abuse and corruption of power.

---

[1] As a direct and proximate result of the employment relationship being terminated; Ms. Limcaco (i) lost her salary and bonus, (ii) lost her home and the equity she had in it, (iii) was unable to find alternate employment in Las Vegas and was forced to move back to Los Angeles, (iv) suffered adverse credit consequences, and (v) was humiliated, embarrassed, frightened, depressed and distraught.

7.      In fact, on information and belief, Mr. Wynn, who perpetrated these alleged sexual assaults, orchestrated Ms. Limcaco's termination and cleared out the one person who was doing the right thing by reporting the complaints to her superiors. Once he made sure that the Wynn got rid of Ms. Limcaco, Mr. Wynn cleared the way for himself to continue to assault and harass female employees of the Wynn (and all applicable entities) for years to come. On information and belief, this atrocious behavior, and the mentality of destroying anyone who interfered with Mr. Wynn's power, went unchecked until 2018.

8.      It was only after the publication of a Wall Street Journal article on January 27, 2018, which addressed Mr. Wynn's pattern of sexual misconduct,[2] and his subsequent removal from power in connection with his resignation as Chairman and CEO of the applicable Wynn entities on or around February 7, 2018,[3] that Ms. Limcaco felt safe enough to come forward with her story and pursue her claims. Ms. Limcaco felt traumatized and powerless against such a dominating force until recently.

9.      The circumstances surrounding Defendants' outlandish actions taken against Ms. Limcaco are so outrageous that the Wynn is equitably estopped from asserting that Ms. Limcaco's claims are time-barred. Defendants' actions of abruptly terminating her (in connection with the surrounding circumstances) constituted specific threats to Ms. Limcaco's career and personal safety. She is undergoing treatment for Post-Traumatic Stress Disorder (PTSD) and suffered demonstrable duress,  as set forth herein.  It is only due to Mr. Wynn's removal from power and a change in culture that Ms. Limcaco has overcome the crippling fear she previously felt for her own personal safety and professional well-being and has now summoned the courage to speak up and assert her

---

[2] On January 27, 2018, the Wall Street Journal published an article addressing accounts of Mr. Wynn's alleged sexual misconduct. Alexandra Berzon, Chris Kirkham, Elizabeth Bernstein and Kate O'Keeffe, *Dozens of People Recount Pattern of Sexual Misconduct by Las Vegas Mogul Steve Wynn*, WSJ.COM (Jan. 27, 2018) https://www.wsj.com/articles/dozens-of-people-recount-pattern-of-sexual-misconduct-by-las-vegas-mogul-steve-wynn-1516985953; Pursuant to Fed.Rules Evid. Rule 201(b)(2), Plaintiff asks the Court to take judicial notice that the Wall Street Journal published the herein referenced article on January 27, 2018 regarding accounts of Steve Wynn's alleged sexual misconduct.

[3] On February 7, 2018, the Wall Street Journal published an article confirming that Mr. Wynn was resigning from his role as the CEO of Wynn Resorts, Ltd. Chris Kirkham, Alexandra Berzon and Kate O'Keeffe, *Steve Wynn Steps Down as Wynn Resorts CEO*, WSJ.COM (Feb. 7, 2018)  (*see* https://www.wsj.com/articles/steve-wynn-to-step-down-as-wynn-resorts-ceo-1517972210; Pursuant to Fed.Rules Evid. Rule 201(b)(2), Plaintiff asks the Court to take judicial notice that the Wall Street Journal published the herein referenced article on February 7, 2018 regarding Steve Wynn's resignation from Wynn Resorts, Ltd.

rights. Ms. Limcaco took prompt action once the threat was removed. Through this action, Ms. Limcaco intends to hold the Wynn, Mr. Wynn and all those acting in concert with them fully liable for the significant damages caused by their tortious and unlawful conduct.

## II.   THE PARTIES

10.   Plaintiff, Angelica Christina Limcaco, is an adult of legal age residing in Los Angeles, California. Ms. Limcaco resided in Las Vegas, Nevada at the time of the alleged incidents.

11.   Plaintiff is informed and believes and based thereon alleges that Defendant, Wynn Las Vegas, LLC, is, and at all times relevant hereton has been, a subsidiary of Wynn Resorts, Ltd. The Wynn is incorporated in Nevada and has its principal place of business in Las Vegas, Nevada. Plaintiff is further informed and believes and based thereon alleges that the Wynn owns and operates Wynn Las Vegas, an integrated destination resort on the "Strip" in Las Vegas, Nevada. Plaintiff is informed and believes and based thereon alleges that the Wynn was founded in 2001 and has about 12,000 employess.

12.   Plaintiff is informed and believes and based thereon alleges that at all times relevant herein, Defendant Steve Wynn has been an adult of legal age residing in Las Vegas, Nevada.

13.   Plaintiff is informed and believes and based thereon alleges that at all times relevant herein, Defendant Wynn had at least fifteen employees, and was an "employer" within the meaning of Title VII.

14.   Plaintiff is informed and believes and based thereon alleges that at all times relevant herein, Defendant Wynn was also an "employer" within the meaning of N.R.S. 613.340.

15.   Defendants Wynn, DOES 1-10, and ROE CORPORATIONS 1-10 are liable for the acts of their agents and employees as set forth below.

16.   Plaintiff is informed and believes and based thereon alleges that at all times relevant herein, each of the Defendant DOES 1 through 10 were responsible in some manner for the occurrences and injuries alleged in this Complaint and that Plaintiff's damages were proximately caused by their conduct. Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, and therefore sues said defendants by such fictitious names. Plaintiff will amend this Complaint to show such true names and capacities when the same

have been ascertained.  For convenience, each reference to a named defendant herein shall also refer to DOES 1 through 10, and each of them.

17.   Plaintiff is informed and believes and based thereon alleges that at all times relevant herein, each of the Defendant ROE CORPORATIONS 1 through 10 were responsible in some manner for the occurrences and injuries alleged in this Complaint and that Plaintiff's damages were proximately caused by their conduct.  Plaintiff is ignorant of the true names and capacities of the defendants sued herein as ROE CORPORATIONS 1 through 10, inclusive, and therefore sues said defendants by such fictitious names. Plaintiff will amend this Complaint to show such true names and capacities when the same have been ascertained.  For convenience, each reference to a named defendant herein shall also refer to ROE CORPORATIONS 1 through 10, and each of them.

18.   Plaintiff is informed and believes and based thereon alleges that at all material times, Defendants, and each of them, were the agents, employees, partners, joint venturers, co-conspirators, owners, principals, and or employers of the remaining Defendants, and each of them, and are, and at all times herein mentioned were, acting within the course and scope of that agency, employment, partnership, conspiracy, ownership or joint venture. Plaintiff is further informed and believes and based thereon alleges that the acts and conduct herein alleged were known to, and authorized, directed, and/or ratified by, the officers, directors, and managing agents of Defendant corporations or business entities, and each of them.

### III.   <u>JURISDICTION AND VENUE</u>

19.   This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law.

20.   This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims arise from the same common set of operative facts as her federal law claims. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial efficiency, economy, convenience, consistency, and fairness to the parties.

21.   Venue is proper in, and Defendants are subject to the personal jurisdiction of this

Court because (a) Defendant Wynn maintains facilities and business operations in this District; (b) Defendant Steve Wynn resides in this district; and (c) all or most of the events giving rise to this action occurred in this District. 28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f)(3).

## IV.   LOCAL RULE 1A 11-2

22.    Jordan Matthews has complied with Local Rule 1A 11-2.

23.    Michael D. Holtz has complied with Local Rule 1A 11-2.

## V.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

24.    Plaintiff filed a charge with the Nevada Equal Rights Commission ("NERC") on May 16, 2018. Pursuant to Title VII, § 706(c), a charge was filed with the United States Equal Employment Opportunity Commission ("EEOC) on May 23, 2018, as the NERC proceedings were terminated within sixty days of filing a charge with the NERC.

25.    The EEOC requested formal charge language on June 4, 2018. Counsel provided formal charge language via a Form 5 with various amendments on June 5, 2018.

26.    The EEOC issued a Right to Sue Letter on June 11, 2018.

27.    Plaintiff, via her counsel, received the Right to Sue Letter from the EEOC on June 14, 2018.

28.    Plaintiff timely filed an original complaint on September 4, 2018 and complied with all administrative prerequisites in bringing this lawsuit.

## VI.   FACTUAL ALLEGATIONS

29.    Plaintiff's employment with the Wynn was facilitated via her relationship with her prior employer, Mr. Jose Eber, who referred her to Ms. Elaine Wynn.

30.    Plaintiff was offered employment as the salon manager of the Wynn on June 8, 2005. She had a start date of June 13, 2005 and was offered an annual salary of $65,000 with an annual bonus.

31.    At all times material to this action, Plaintiff was employed as the manager of the salon in Defendant Wynn's office in Las Vegas, Nevada.

32.    At all times materials to this action, on information and belief, Mr. Wynn was the Chairman and CEO of Wynn Resorts, Ltd. (the parent company of the Wynn).

33.     Within the first two weeks of Plaintiff's employment, her assistant manager, Carolyn, told her that an employee, Andrea, needed to speak with Plaintiff about a sensitive matter.

34.     Plaintiff promptly scheduled a meeting to speak with Andrea and, when they met, Andrea conveyed details of an incident where she was allegedly raped by Mr. Wynn in his office and had become pregnant with his child. Andrea told Plaintiff that her husband found out about the pregnancy and was furious. Plaintiff documented the meeting in a report, which was signed by Plaintiff, Andrea and Carolyn.

35.     Per protocol, Plaintiff immediately sent the report to human resources ("HR"), which was overseen by Mr. Nathan.

36.     Within about twenty-four hours of sending the report to HR, Plaintiff was called to the office of her supervisor, Ms. Whennen, who proceeded to reprimand Plaintiff for sending the report to human resources. Ms. Whennen was in a position of authority and power over Plaintiff. Plaintiff was merely a subordinate trying to do and keep her job.

37.     Plaintiff tried to explain to Ms. Whennen that she was following protocol, as she was trained to do, but Ms. Whennen told her "***let me make this clear to you – this is how it works here – all reports go to me first – especially anything concerning Steve Wynn.***"

38.     After Plaintiff sent the report to HR, Andrea never returned to work. Several co-workers (including the artistic director of the Wynn) attempted to contact Andrea, but were unable to reach her. She simply disappeared abruptly.

39.     Ms. Whennen expressly told Plaintiff not to speak about the alleged rape incident ever again.

40.     Ms. Whennen told Plaintiff that her assistant manager, Carolyn, was going to be fired (apparently for reporting the alleged rape incident to Plaintiff).

41.     Plaintiff felt emotionally and psychologically dominated by Ms. Whennen.

42.     It was common knowledge among Plaintiff and other Wynn employees, and Plaintiff  reasonably believed, that taking action against the Wynn would result in being terminated and blacklisted in the gaming industry and elsewhere.

43.     While working at the Wynn, Plaintiff was told by the artistic director that a story was coming out in the press about Mr. Wynn and a woman who disappeared on a boat. Plaintiff was told that Mr. Wynn bought the publication and killed the story.

44.     Plaintiff was told by multiple co-workers that Mr. Wynn was more powerful than the police and that there may be people buried in the desert because of Mr. Wynn. Plaintiff felt and believed that Mr. Wynn operated outside of the bounds of the law.

45.     Given what Plaintiff was told by various co-workers and, due to the circumstances surrounding Andrea's disappearance, Plaintiff became concerned for her own personal safety.

46.     On several occasions, Plaintiff was instructed by her supervisors to hire certain new employees when there was no room on the compendium (the budget showing the number of hair dressers, manicurists, etc. that the salon was allowed to employ). For instance, in certain cases, attractive women were hired as receptionists or manicurists, but were paid twice the salary of a manager seemingly to serve Mr. Wynn's agenda (he would often schedule private appointments in his personal office with female employees where he would engage in sexual activity with them).

47.     On several occasions, Plaintiff showed up to work only to discover that a co-worker had been terminated. Most of the time, Plaintiff never heard from the co-worker again. The work environment was volatile, which caused Plaintiff to feel mentally and emotionally unstable.

48.     After an alleged sexual encounter with Mr. Wynn, a co-worker by the name of Angelina showed Plaintiff Mr. Wynn's semen on her dress, which disgusted Plaintiff. Plaintiff reported this incident to Ms. Whennen, who did nothing about the incident.

49.     During her employment with the Wynn, various co-workers, including but not limited to, (a) administrative assistant, Elizabeth; (b) lead manicurist, Jennifer; (c) manicurist, Tiffany; and (d)  make-up artist, Cole, reported to Ms. Limcaco alleged incidents of sexual misconduct by Mr. Wynn.

50.     During her employment with the Wynn, Plaintiff reported at least another six

additional incidents of alleged sexual harassment directly to Ms. Whennen, as Plaintiff was instructed to do.

51.    Despite Plaintiff's reports to Ms. Whennen, Ms. Whennen failed to take action to remedy the situation.

52.    Due to Ms. Whennen's failure to take action, Plaintiff took her concerns to a more senior member of the Wynn organization, Mr. Andrew Pascal (Elaine Wynn's nephew and President & COO of Wynn Las Vegas).

53.    In a private meeting with Mr. Pascal in or about June of 2006, Plaintiff addressed a variety of issues including (a) multiple incidents of alleged sexual harassment involving Mr. Wynn and various employees; (b) Ms. Whennen's failure to take action; and (c) Ms. Whennen's lack of support in the context of hotel operations.

54.    Shortly after Plaintiff's meeting with Mr. Pascal, Plaintiff was tasked with a project. For about one-and-a-half weeks, Plaintiff was ordered to stay in a remote part of the resort and to rate it (the equivalent of being sent to Siberia). Plaintiff then went on a scheduled one-week vacation.

55.    On her first day back from vacation, Plaintiff was called into Ms. Whennen's office and abruptly told that she was being terminated because some employees had allegedly complained about her.

56.    Ms. Whennen refused to provide any detail about the complaints. Instead, she directed Plaintiff to sign some paperwork, gave Plaintiff a small check, and terminated her effective immediately. Plaintiff left in complete shock.

57.    As a result of Plaintiff's termination from the Wynn and her subsequent inability to find work in Las Vegas, Plaintiff was forced to move back to Los Angeles, California. She lost her house and suffered adverse credit consequences. Plaintiff suffered embarrassment, humiliation, anguish, depression, sleeplessness, anxiety and helplessness after being terminated by the Wynn, and it took Plaintiff several months to land on her feet and find employment after she returned to Los Angeles. Even as of the present, Planitiff (a) is in professional treatment for PTSD; (b) has difficulty sleeping; (c) takes prescribed medication; and (d) experiences various

1  effects of abuse including depression and physical illness.

2  58.  Plaintiff felt threatened and intimidated because of the specific affirmative actions

3  the Wynn took against her. Indeed, there was not just a threat of retaliation. Instead, there was

4  actual retaliation when the Wynn took action against Plaintiff and threw her out of the

5  organization. Further, Plaintiff legitimately feared for her life. On information and belief, Mr.

6  Wynn directed and orchestrated Plaintiff's termination all in an effort to retain his power and

7  silence anyone who questioned his nefarious and unlawful acts.

8  59.  Plaintiff was forced to take a position with Mr. Eber when she returned to Los

9  Angeles. However, due to the close connection between Mr. Eber and the Wynn, Plaintiff was

10  reasonably afraid that she would be further ruined if she sued the Wynn and/or Mr. Wynn. Mr.

11  Wynn's power was beyond the confines of the city of Las Vegas.

12  60.  Plaintiff was traumatized and kept these events substantially to herself until

13  around 2018.

14  61.  Through her actual experience (i.e. (a) being terminated from the Wynn; (b)

15  losing her house as a result of her termination; and (c) undergoing extreme mental and emotional

16  distress), Plaintiff perceived Mr. Wynn as intimidating and prone to using violence against

17  anyone who crossed him.

18  62.  Mr. Wynn and the Wynn's actions against Plaintiff were, on information and

19  belief, intentional actions taken by those in a position of power and control over Plaintiff.

20  63.  Due to the duress, which Plaintiff was subjected as a result of the Wynn

21  terminating her and effectively attempting to destroy her life, Plaintiff forwent filing suit until

22  Mr. Wynn was removed from power.

23  64.  On information and belief, after Plaintiff's termination from the Wynn, the Wynn

24  did not take any substantial action to terminate Steve Wynn's abuse of power, until he was

25  forced to resign in 2018.

26  65.  Indeed, on information and belief, Ms. Wynn told a court in March 2018 that she

27  informed Kim Sinatra (former General Counsel for Wynn Resorts, Ltd.) in 2009 that Mr. Wynn

28  settled a sexual harassment lawsuit with a female employee in 2005. On information and belief,

/268257

Elaine Wynn said that Sinatra, after consulting with lawyers, informed her that the settlement was not an issue of concern for the Wynn Resorts (and, as a result, any affiliate entities).[4]

66.    It was not until the Wall Street Journal reported allegations of Mr. Wynn's rampant abuse of power in January 2018 that he was forced to step down from his role at the Wynn. In connection with Mr. Wynn's resignation and the public outcry against him, he effectively lost the power he once yielded at all costs and without conscience against those who opposed him.

67.    Plaintiff took prompt action once the threat was removed by filing a charge with the EEOC on or around May 23, 2018 (within about three months of Mr. Wynn's resignation).

### VII.    EQUITABLE ESTOPPEL

68.    Defendants are estopped from asserting the statute of limitations. Courts within the Ninth Cirtcuit have applied equitable estoppel in the context of a threatened plaintiff. *M.N.O. v. Magana*, 2006 U.S. Dist. LEXIS 13042 at *10. Whether a defendant is estopped from asserting the limitations defense, based on inducement to forbear filing suit, ordinarily involves questions of fact and therefore should be resolved by the factfinder.

69.    Plaintiff was induced to refrain from filing suit. Ms. Whennen threatened Plaintiff by telling her to never speak of Andrea's alleged rape incident again and to never report sexual assault allegations against Mr. Wynn to HR. Mr. Wynn and the Wynn threatened Plaintiff with action by throwing her out of the organization. Plaintiff has suffered demonstrable duress because she (a) feared for her life (until the threat was only recently removed); (b) has difficulty sleeping; and (3) is undergoing treatment for PTSD.

70.    Plaintiff did not take immediate action because of the Wynn and Mr. Wynn's actions against her. Plaintiff feared that filing suit against the Wynn would destroy her relationship with Mr. Eber and others in the beauty industry because Defendants had already destroyed her life in Las Vegas. Plaintiff perceived Mr. Wynn and the Wynn as intimidating, and

---

[4] On August 8, 2018, in connection with a report on Kim Sinatra's settlement with Wynn Resorts, the Las Vegas Review Journal addressed Ms. Wynn's prior discussions with Sinatra concerning allegations involving Mr. Wynn and sexual assault. Richard N. Velotta, *Outgoing Wynn Resorts executive Kim Sinatra to get $1.8M cash settlement*, LAS VEGAS REVIEW JOURNAL (Aug. 8, 2018) https://www.reviewjournal.com/business/casinos-gaming/outgoing-wynn-resorts-executive-kim-sinatra-to-get-1-8m-cash-settlement/; *See also*, Exhibit A.

reasonably perceived Mr. Wynn as prone to using violence against anyone who crossed him, because other employees were terminated and disappeared after reporting incidents of misconduct (e.g., Andrea disappeared after the alleged rape allegation, and Plaintiff's assistant manager Carolyn was terminated for reporting Andrea's alleged rape incident to Plaintiff). These actions caused Plaintiff to forebear from filing suit until recently.

71.    Plaintiff questioned Ms. Whennen and, as a result, her career in Las Vegas was destroyed and she lost her home. Plaintiff knew that taking legal action against the Wynn and/or Mr. Wynn would put her at further risk of losing her career in Los Angeles due to the close-knit nature of the beauty industry. Defendants had already demonstrated their power by destroying Plaintiff's life in Las Vegas. Plaintiff feared the reach of Defendants' nefarious powers. Plaintiff was effectively silenced.

72.    Plaintiff refrained from filing suit initially because (a) Mr. Wynn remained in power and (b) there was no indication that the Wynn did anything to stop his abuse of power until around 2018. It was not until Mr. Wynn's resignation from the Wynn in February 2018 and the public outcry against him for alleged sexual misconduct and abuse of power that the threat was removed. Plaintiff filed a claim with the EEOC within about three months of Mr. Wynn's removal from power.

73.    The factors of estoppel by inducement are issues of fact to be determined by a fact finder.  Legal precedent dictates that these issues be litigated accordingly.

## VIII.    CLAIMS FOR RELIEF

### A.    FIRST CLAIM FOR RELIEF

**(For Retaliation in Violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42  U.S.C. § 2000e-3(a) Against Wynn Las Vegas, LLC)**

74.    Plaintiff hereby re-alleges and incorporates by reference as if more fully set forth at length herein all preceding paragraphs of the within Complaint.

75.    Section 704(a) of Title VII of the Civil Rights Act of 1964, *as amended*, prohibits employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

76.   As alleged hereinabove, Plaintiff made formal and informal complaints to Defendant the Wynn and its respective agents, including but not limited to human resources, Ms. Whennen and Mr. Pascal, opposing the Wynn's unlawful, discriminatory employment practices based on sex.

77.   As a result of Plaintiff's complaints, the Wynn and its agents took materially adverse actions against Plaintiff, including but not limited to, (a) reprimanding Plaintiff for reporting an alleged rape incident to human resources per protocol, (b) threatening and coercing Plaintiff to never speak about an alleged rape incident ever again, and (c) terminating Plaintiff for continuing to oppose the Wynn's unlawful, discriminatory employment practices based on sex.

78.   The Wynn's adverse actions constituted retaliatory workplace harassment.

79.   The Wynn's retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

80.   As a direct and proximate result of the Wynn's retaliatory actions, Plaintiff has suffered damages in an amount in excess of the minimum jurisdictional limits of this Court, the exact amount subject to proof at the time of trial.

81.   Plaintiff is informed and believes and based thereon alleges that Defendant the Wynn's conduct as alleged hereinabove was done intentionally and/or with a conscious disregard of Plaintiff's rights and interests, and with the intent to vex, injure or annoy Plaintiff, such as to constitute malice, fraud or oppression, thus warranting the imposition of punitive or exemplary damages against the Wynn in an amount appropriate to punish or set an example of the Wynn and to deter the Wynn from engaging in similar conduct in the future, the exact amount subject to proof at the time of trial.

### B.   SECOND CLAIM FOR RELIEF

**(For Sexual Harassment (Hostile Work Environment) in Violation of**

**Title VII of the Civil Rights Act of 1964, *as amended*,**

**42 U.S.C. §§ 2000e et seq., 2000e-2(a)(1) Against Wynn Las Vegas, LLC)**

82.   Plaintiff hereby re-alleges and incorporates by reference as if more fully set forth

at length herein all preceding paragraphs of the within Complaint.

83.   Under Title VII, an employer is liable under circumstances where (a) the plaintiff is subjected to verbal or physical conduct of a sexual nature; (b) the conduct was unwelcome; (c) the conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create a sexually abusive or hostile work environment; (d) the plaintiff perceived the working environment to be abusive or hostile; and (e) a reasonable woman in the plaintiff's circumstances would consider the working environment to be abusive or hostile. 42 U.S.C. § 2000e-2(a)(1).

84.   As alleged hereinabove, Plaintiff was subjected to verbal and physical conduct of a sexual nature when a co-worker (Angelina) showed Plaintiff her dress, which was stained with Mr. Wynn's semen after an alleged sexual encounter with Mr. Wynn.

85.   As alleged hereinabove, the conduct was unwelcome because the incident not only disgusted Plaintiff, but Plaintiff also had no interest in hearing about anything having to do with this alleged sexual encounter. Plaintiff reported the incident to Ms. Whennen, but nothing was done.

86.   As alleged hereinabove, the conduct was sufficiently severe or pervasive to alter the working conditions of Plaintiff's employment both subjectively and objectively because the incident caused Plaintiff great discomfort and any reasonable woman or person would respond similarly.

87.   As a direct and proximate result of Defendant the Wynn's harassing conduct, Plaintiff has suffered damages in an amount in excess of the minimum jurisdictional limits of this Court, the exact amount subject to proof at the time of trial.

88.   Plaintiff is informed and believes and based thereon alleges that Defendant the Wynn's conduct as alleged hereinabove was done intentionally and/or with a conscious and reckless disregard of Plaintiff's rights and interests, and with the intent to vex, injure or annoy Plaintiff, such as to constitute malice, fraud, or oppression, thus warranting the imposition of punitive or exemplary damages against the Wynn in an amount appropriate to punish or set an example of the Wynn, and to deter the Wynn from engaging in similar conduct in the future, the

1  exact amount subject to proof at the time of trial.

2  **C. THIRD CLAIM FOR RELIEF**

3  **(For Hostile Work Environment Caused By Supervisor – Claim Based Upon Vicarious**

4  **Liability in Violation of Title VII of the Civil Rights Act of 1964, *as amended*,**

5  **42  U.S.C. § 701 et seq., 42 U.S.C. §§ 2000e et seq., 200e(b) Against Wynn Las Vegas,**

6  **LLC)**

7      89.    Plaintiff hereby re-alleges and incorporate by reference as if more fully set forth

8  at length herein all preceding paragraphs of the within Complaint.

9      90.    Under Title VII of the Civil Rights Act of 1964, *as amended*, an employer is

10  subject to vicarious liability to the victimized employee for an actionable hostile work

11  environment created by a supervisor with immediate (or successively higher) authority over the

12  employee. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000a et seq.

13      91.    As alleged hereinabove, Plaintiff was subjected to a sexually hostile work

14  environment by Ms. Whennen when (a) Ms. Whennen reprimanded Plaintiff for reporting an

15  alleged rape incident to human resources and (b) Ms. Whennen ignored Plaintiff's additional

16  reports of alleged sexual assault, effectively forcing Plaintiff to work in an environment rampant

17  with sexual abuse.

18      92.    As alleged hereinabove, Ms. Whennen was Plaintiff's immediate supervisor.

19      93.    As alleged hereinabove, Defendant the Wynn failed to exercise reasonable care to

20  prevent and promptly correct the sexually harassing behavior because no immediate action was

21  taken to change the workplace culture and Plaintiff's demands were effectively ignored.

22      94.    As a direct and proximate result of Defendant the Wynn's tortious conduct,

23  Plaintiff has suffered damages in an amount in excess of the minimum jurisdictional limits of

24  this Court, the exact amount subject to proof at the time of trial.

25      95.    Plaintiff is informed and believes and based thereon alleges that Defendant the

26  Wynn's conduct as alleged hereinabove was done intentionally and/or with a conscious and

27  reckless disregard of Plaintiff's rights and interests, and with the intent to vex, injure or annoy

28  Plaintiff, such as to constitute malice, fraud or oppression, thus warranting the imposition of

/268257

punitive or exemplary damages against the Wynn in an amount appropriate to punish or set an example of the Wynn, and to deter the Wynn from engaging in similar such conduct in the future, the exact amount subject to proof at the time of trial.

### D.  FOURTH CLAIM FOR RELIEF

**(For Sexual Harassment (Hostile Work Environment Caused By Co-Worker) – Claim**

**Based on Negligence in Violation of**

**Title VII of the Civil Rights Act of 1964, *as amended*,**

**42  U.S.C.A § 2000e et seq. Against Wynn Las Vegas, LLC)**

96.    Plaintiff hereby re-alleges and incorporates by reference as if more fully set forth at length herein all preceding paragraphs of the within Complaint.

97.    Under Section 701 of Title VII of the Civil Rights Act of 1964, *as amended*, an employer may be found liable to an employee for sexual harassment by co-employees in a hostile work environment case for what management-level employees knew or should have known. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

98.    As alleged hereinabove, Plaintiff was subjected to a sexually hostile work environment by a co-worker when a co-worker (Angelina) showed Plaintiff her dress, which was allegedly stained with Mr. Wynn's semen after an alleged sexual encounter with Mr. Wynn.

99.    As alleged hereinabove, Defendant the Wynn's management knew or should have known of the harassment because (a) Plaintiff reported an alleged rape incident to human resources and (b) Plaintiff reported at least six additional incidents of sexual harassment to Ms. Whennen.

100.    As a direct and proximate result of Defendant the Wynn's tortious conduct, Plaintiff has suffered damages in an amount in excess of the minimum jurisdictional limits of this Court, the exact amount subject to proof at the time of trial.

101.    Plaintiff is informed and believes and based thereon alleges that Defendant the Wynn's conduct as alleged hereinabove was done intentionally and/or with a conscious and reckless disregard of Plaintiff's rights and interests, and with the intent to vex, injure or annoy Plaintiff, such as to constitute malice, fraud or oppression, thus warranting the imposition of

punitive or exemplary damages against the Wynn in an amount appropriate to punish or set an example of the Wynn, and to deter the Wynn from engaging in similar such conduct, the exact amount subject to proof at the time of trial.

### E.   FIFTH CLAIM FOR RELIEF

**(For Retaliation in Violation of N.R.S. 613.340 Against Wynn Las Vegas, LLC)**

102.   Plaintiff re-alleges and incorporates by reference as if more fully set forth at length herein all preceding paragraphs of the within Complaint.

103.   N.R.S. 613.340 (the "Section") prohibits employers from discriminating against an employee because the employee has opposed any practice made an unlawful employment practice under the Section. N.R.S. 613.340.

104.   As alleged hereinabove, Plaintiff made formal and informal complaints to Defendant the Wynn and its respective agents, including, but not limited to, human resources, Ms. Whennen and Mr. Pascal opposing the Wynn's unlawful, discriminatory employment practices based on sex.

105.   As a result of Plaintiff's complaints, the Wynn and its agents took materially adverse actions against Plaintiff, including but not limited to reprimanding, threatening and coercing Plaintiff to never speak about an alleged rape incident ever again. Further, Plaintiff was terminated for continuing to oppose the Wynn's unlawful, discriminatory employment practices based on sex.

106.   The Wynn's adverse actions constituted retaliatory workplace harassment.

107.   The Wynn's retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under the Section.

108.   As a direct and proximate result of Defendant the Wynn's retaliatory actions, Plaintiff has suffered damages in an amount in excess of the minimum jurisdictional limits of this Court, the exact amount subject to proof at the time of trial.

109.   Plaintiff is informed and believes and based thereon alleges that Defendant the Wynn's conduct as alleged hereinabove was done intentionally and/or with a conscious disregard of Plaintiff's rights and interests, and with the intent to vex, injure or annoy Plaintiff, such as to

constitute malice, fraud or oppression, thus warranting the imposition of punitive or exemplary damages against the Wynn in an amount appropriate to punish or set an example of the Wynn, and to deter the Wynn from engaging in similar conduct in the future, the exact amount subject to proof at the time of trial.

### F.   SIXTH CLAIM FOR RELIEF

**(For Wrongful Termination in Violation of Public Policy Against Wynn Las Vegas, LLC)**

110.   Plaintiff hereby re-alleges and incorporates by reference as if more fully set forth at length herein all preceding paragraphs of the within Complaint.

111.   Nevada's laws concerning wrongful termination in violation of public policy hold that "tortious discharge may arise when an employer dismisses an employee in retaliation for the employee's doing of acts which are consistent with or supportive of sound public policy and the common good." *D'Angelo v. Gardner*, 819 P.2d 206 (Nev. 1991).

112.   As alleged hereinabove, Plaintiff opposed Defendant the Wynn's wrongful conduct when Plaintiff (a) reported an alleged rape incident to human resources and (b) reported at least six additional alleged incidents of sexual assault to Ms. Whennen and later, to Mr. Pascal.

113.   As alleged hereinabove, the Wynn terminated Plaintiff in violation of public policy when Plaintiff opposed the Wynn's illegal actions because Plaintiff was abruptly terminated within weeks of reporting various incidents of alleged sexual assault to Mr. Pascal.

114.   As a direct and proximate result of Defendant the Wynn's tortious conduct, Plaintiff has suffered damages in an amount in excess of the minimum jurisdictional limits of this Court, the exact amount subject to proof at the time of trial.

115.   Plaintiff is informed and believes and based thereon alleges that Defendant the Wynn's conduct as alleged hereinabove was done intentionally and/or with a conscious and reckless disregard of Plaintiff's rights and interests, and with the intent to vex, injure or annoy Plaintiff, such as to constitute malice, fraud or oppression, thus warranting the imposition of punitive or exemplary damages against the Wynn in an amount appropriate to punish or set an example of the Wynn, and to deter the Wynn from engaging in similar such conduct in the

future, the exact amount subject to proof at the time of trial.

## G.   SEVENTH CLAIM FOR RELIEF

### (For Intentional Infliction of Emotional Distress Against Wynn Las Vegas, LLC)

116.   Plaintiff hereby re-alleges and hereby incorporates by reference as if more fully set forth at length herein all preceding paragraphs of the within Complaint.

117.   The elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) plaintiff's having suffered severe or extreme emotional distress; and (3) actual or proximate causation. *Dillard Dept. Stores, Inc. v. Beckwith,* 989 P.2d 882 (Nev. 1999).

118.   As alleged hereinabove, Defendant the Wynn subjected Plaintiff to extreme and outrageous conduct with the intention of, or reckless disregard for, causing Plaintiff emotional distress when the Wynn refused to sufficiently address various reports of sexual assault.

119.   As alleged hereinabove, Plaintiff suffered extreme emotional distress when she was abruptly terminated; left her place of employment in shock; was forced to move out of state because she no longer had any means to support herself in Las Vegas; and reasonably feared for her personal safety.

120.   As alleged hereinabove, the Wynn's actions were the actual or proximate cause of Plaintiff's distress because Plaintiff was terminated for opposing the Wynn's unlawful conduct when she continued to report various alleged incidents of sexual assault to her superiors.

121.   As a direct and proximate result of Defendant the Wynn's tortious conduct, Plaintiff has suffered damages in an amount in excess of the minimum jurisdictional limits of this Court, the exact amount subject to proof at the time of trial.

122.   Plaintiff is informed and believes and based thereon alleges that Defendant the Wynn's  conduct as alleged hereinabove was done intentionally and/or with a conscious and reckless disregard of Plaintiff's rights and interests, and with the intent to vex, injure or annoy Plaintiff, such as to constitute malice, fraud or oppression, thus warranting the imposition of punitive or exemplary damages against the Wynn in an amount appropriate to punish or set an example of the Wynn, and to deter the Wynn from engaging in similar conduct in the future, the

/268257

exact amount subject to proof at the time of trial.

## H.   EIGHTH CLAIM FOR RELIEF

### (For Civil Conspiracy Against All Defendants)

123.   Plaintiff hereby re-alleges and incorporates by reference as if more fully set forth at length herein all preceding paragraphs of the within Complaint.

124.   "Actionable civil conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Consolidated Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1261 (Nev. 1998). A plaintiff can rely on circumstantial evidence to show a concerted effort between two parties with respect to a conspiracy, as direct evidence is not required. *Guilfoyle v. Olde Monmouth Stock Transfer Co., Inc.*, 335 P.3d 190 (Nev. 2014).

125.   As alleged hereinabove, there was a concerted effort by two or more persons to harm Plaintiff because (a) after reporting various incidents of alleged sexual assault to Ms. Whennen, and (b) after then reporting various alleged incidents of sexual assault to Mr. Pascal (after Ms. Whennen failed to remedy the situation), Plaintiff was immediately sent away from the salon for an impromptu work assignment just before a planned one-week vacation, and then abruptly terminated when she returned to work.

126.   As alleged hereinabove, on information and belief, Defendant Steve Wynn acted on behalf of his own personal interests when he directed and orchestrated Plaintiff's termination. He personally conspired with Ms. Whennen and others from the Wynn to destroy Plaintiff's career and livelihood, so that he could continue to assault and harass female employees of the Wynn for years to come.

127.   As alleged hereinabove, Plaintiff was damaged as a result of Defendants' concerted actions because, among other consequences, she was terminated the day she returned to work

128.   As alleged hereinabove, the Wynn fabricated the basis for Plaintiff's termination and concealed its true intent to cover up Steve Wynn's unconscionable and reprehensible abuse

of power.

129.   As a direct and proximate result of Defendants' tortious conduct, Plaintiff has suffered damages in an amount in excess of the minimum jurisdictional limits of this Court, the exact amount subject to proof at the time of trial.

130.   Plaintiff is informed and believes and based thereon alleges that Defendants' conduct as alleged hereinabove was done intentionally and/or with a conscious and reckless disregard of Plaintiff's rights and interests, and with the intent to vex, injure or annoy Plaintiff, such as to constitute malice, fraud or oppression, thus warranting the imposition of punitive or exemplary damages against Defendants, and each of them, in an amount appropriate to punish or set an example of Defendants, and to deter Defendants from engaging in similar conduct in the future, the exact amount subject to proof at the time of trial.

## I.      NINTH CLAIM FOR RELIEF

### (For Interference with Contractual Relations against Steve Wynn)

131.   Plaintiff hereby realleges, adopts and incorporates by reference as if more fully set forth at length herein all preceding paragraphs of the within Complaint.

132.   As alleged hereinabove, on information and belief, Mr. Wynn, acting on behalf of his own personal interests, knew that Plaintiff had an employment contract with the Wynn. On information and belief, Mr. Wynn directed and orchestrated Plaintiff's wrongful termination in an effort to silence and destroy the one person who was doing her job by reporting these outlandish allegations to her superiors. On information and belief, Mr. Wynn attempted to personally and financially destroy Plaintiff for threatening to undermine his rampant abuse of power, so that he could continue to sexually assault the Wynn's female employees for years to come.

133.   As a direct and proximate result of Mr. Wynn's actions, contractual relations between Plaintiff and the Wynn were severed.

134.   As a direct and proximate result of Mr. Wynn's intentional interference with Plaintiff's contractual relations, Plaintiff has suffered damages in an amount in excess of the minimum jurisdictional limits of this Court, the exact amount subject to proof at the time of trial.

135.    Plaintiff is informed and believes and based thereon alleges that Mr. Wynn's conduct as alleged hereinabove was done intentionally and/or with a conscious and reckless disregard of Plaintiff's rights and interests, and with the intent to vex, injure or annoy Plaintiff, such as to constitute malice, fraud or oppression, thus warranting the imposition of punitive or exemplary damages against Mr. Wynn, in an amount appropriate to punish or set an example of Mr. Wynn, and to deter Mr. Wynn from engaging in similar conduct in the future, the exact amount subject to proof at the time of trial.

## J.   TENTH CLAIM FOR RELIEF

### (For Interference with Economic Advantage Agaisnt Steve Wynn)

136.    Plaintiff  hereby realleges, adopts and incorporates by reference as if more fully set forth at length herein all preceding paragraphs of the within Complaint.

137.    Plaintiff is informed and believes and based thereon alleges that Mr. Wynn was aware of her contract with the Wynn. To that extent, he was aware of the incentives connected to Plaintiff's contract, which carried with it the prospect of economic advantage for her. Plaintiff is informed and believes and based thereon alleges that Mr. Wynn orchestrated and directed Plaintiff's termination; thereby destroying her propects of economic gain at the Wynn or elsewhere in Las Vegas. Plaintiff was effectively blacklisted.

138.    As a direct and proximate result of Mr. Wynn's actions, Mr. Wynn interfered with Plaintiff's economic opportunities at the Wynn and other organizations in Las Vegas and caused Plaintiff to suffer damages in an amount in excess of the minimum jurisdictional limits of this Court, the exact amount subject to proof at the time of trial.

139.    Plaintiff is informed and believes and based thereon alleges that Mr. Wynn's conduct as alleged hereinabove was done intentionally and/or with a conscious and reckless disregard of Plaintiff's rights and interests, and with the intent to vex, injure or annoy Plaintiff, such as to constitue malice, fraud or oppression, thus warranting the imposition of punitive or exemplary damages against Mr. Wynn, in an amount appropriate to punish or set an example of Mr. Wynn, and to deter Mr. Wynn from engaging in similar conduct in the future, the exact amount subject to proof at the time of trial.

/268257

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

**AS TO THE FIRST CAUSE OF ACTION**:

1.      For general and special damages in an amount to be proven at trial, together with interest thereon at the legal rate;

2.      For punitive damages in an amount appropriate to punish and deter Defendant Wynn Las Vegas, LLC, the exact amount subject to proof at the time of trial;

**AS TO THE SECOND CAUSE OF ACTION**:

3.      For general and special damages in an amount to be proven at trial, together with interest thereon at the legal rate;

4.      For punitive damages in an amount appropriate to punish and deter Defendant Wynn Las Vegas, LLC, the exact amount subject to proof at the time of trial;

**AS TO THE THIRD CAUSE OF ACTION**:

5.      For general and special damages in an amount to be proven at trial, together with interest thereon at the legal rate;

6.      For punitive damages in an amount appropriate to punish and deter Defendant Wynn Las Vegas, LLC, the exact amount subject to proof at the time of trial;

**AS TO THE FOURTH CAUSE OF ACTION**:

7.      For general and special damages in an amount to be proven at trial, together with interest thereon at the legal rate;

8.      For punitive damages in an amount appropriate to punish and deter Defendant Wynn Las Vegas, LLC, the exact amount subject to proof at the time of trial;

**AS TO THE FIFTH CAUSE OF ACTION**:

9.      For general and special damages in an amount to be proven at trial, together with interest thereon at the legal rate;

10.      For punitive damages in an amount appropriate to punish and deter Defendant Wynn Las Vegas, LLC, the exact amount subject to proof at the time of trial;

/ / /

**AS TO THE SIXTH CAUSE OF ACTION**:

11.     For general and special damages in an amount to be proven at trial, together with interest thereon at the legal rate;

12.     For punitive damages in an amount appropriate to punish and deter Defendant Wynn Las Vegas, LLC, the exact amount subject to proof at the time of trial;

**AS TO THE SEVENTH CAUSE OF ACTION**:

13.     For general and special damages in an amount to be proven at trial, together with interest thereon at the legal rate;

14.     For punitive damages in an amount appropriate to punish and deter Defendant Wynn Las Vegas, LLC, the exact amount subject to proof at the time of trial;

**AS TO THE EIGHTH CAUSE OF ACTION**:

15.     For general and special damages in an amount to be proven at trial, together with interest thereon at the legal rate;

16.     For punitive damages in an amount appropriate to punish and deter Defendants, the exact amount subject to proof at the time of trial;

**AS TO THE NINTH CAUSE OF ACTION**:

17.     For general and special damages in an amount to be proven at trial, together with interest theron at the legal rate;

18.     For punitive damages in an amount to punish and deter Defendant Steve Wynn, the exact amount subject to proof at the time of trial;

**AS TO THE TENTH CAUSE OF ACTION**:

19.     For general and special damages in an amount to be proven at trial, together with interest theron at the legal rate;

20.     For punitive damages in an amount to punish and deter Defendant Steve Wynn, the exact amount subject to proof at the time of trial.

**AS TO ALL CAUSES OF ACTION**:

21.     For all costs of suit incurred herein;

22.     For lost wages and other compensation denied or lost to Plaintiff by reason of

/268257

1   Defendants' unlawful actions, in an amount to be proven at trial;

2        23.    For interest on lost wages, compensation, and damages, including pre-and post-

3   judgment interest and an upward adjustment for inflation;

4        24.    For compensatory damages for Plaintiff's emotional pain and suffering, in an

5   amount to be proven at trial;

6        25.    For reasonable attorney's fees, as may be provided by law;

7        26.    For such other and further relief, as the Court may deem just and appropriate.

8

9   Dated:  October 23, 2018                      Respectfully Submitted,

10                                                By:  /s/ Gregg A. Hubley
                                                  GREGG A. HUBLEY (Nevada Bar # 7386)
11                                                ARIAS SANGUINETTI WANG &
                                                  TORRIJOS LLP
12                                                7030 Smoke Ranch Road, Suite B
                                                  Las Vegas, NV 89128
13                                                Telephone:     (702) 789-7529
                                                  Fascimile:     (702) 909-7865
14                                                Email:         gregg@aswtlawyers.com

15                                                JORDAN MATTHEWS (California Bar #
                                                  316301)
16                                                *Admitted Pro Hac Vice*
                                                  WEINBERG GONSER LLP
17                                                10866 Wilshire Blvd., Suite 1650
                                                  Los Angeles, CA 90024
18                                                Telephone:     (424) 239-2867
                                                  Fascimile:     (424) 238-3060
19                                                Email:         jordan@weinberg-gonser.com

20                                                MICHAEL D. HOLTZ (California Bar #
                                                  149616)
21                                                *Admitted Pro Hac Vice*
                                                  THE HOLTZ FIRM
22                                                9150 Wilshire Blvd., Suite 209
                                                  Beverly Hills, CA 90212
23                                                Telephone:     (310) 464-1088
                                                  Fascimile:     (323) 206-5535
24                                                Email:         mholtz@theholtzfirm.com

25                                                *Attorneys for Plaintiff Angelica Christina
                                                  Limcaco*
26

27

28

/268257

1

**DEMAND FOR JURY TRIAL**

2          Pursuant to the Seventh Amendment to the U.S. Constitution, Rule 38(b) of the Federal

3   Rules of Civil Procedure, plaintiff ANGELICA CHRISTINA LIMCACO hereby demands a trial

4   by jury of this action.

5   Dated:  October 23, 2018                          Respectfully submitted,

6

7                                            By:   /s/ Gregg A. Hubley

8                                                  GREGG A. HUBLEY (Nevada Bar #
                                                   7386)
                                                   ARIAS SANGUINETTI WANG &
9                                                  TORRIJOS LLP
                                                   7030 Smoke Ranch Road, Suite B
10                                                 Las Vegas, NV 89128
                                                   Telephone:     (702) 789-7529
11                                                 Fascimile:     (702) 909-7865
                                                   Email:         gregg@aswtlawyers.com
12
                                                   JORDAN MATTHEWS (California Bar #
13                                                 316301)
                                                   *Pro Hac Vice Admitted*
14                                                 WEINBERG GONSER LLP
                                                   10866 Wilshire Blvd., Suite 1650
15                                                 Los Angeles, CA 90024
                                                   Telephone:     (424) 239-2867
16                                                 Fascimile:     (424) 238-3060
                                                   Email:         jordan@weinberg-
17                                                 gonser.com

18                                                 MICHAEL D. HOLTZ (California Bar #
                                                   149616)
19                                                 *Pro Hac Vice Admitted*
                                                   THE HOLTZ FIRM
20                                                 9150 Wilshire Blvd., Suite 209
                                                   Beverly Hills, CA 90212
21                                                 Telephone:     (310) 464-1088
                                                   Fascimile:     (323) 206-5535
22                                                 Email:         mholtz@theholtzfirm.com

23                                                 *Attorneys for Plaintiff Angelica Christina
                                                   Limcaco*

24

25

26

27

28

/268257